**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

LT. ERIC STORY,             )
                         )
          Plaintiff,     )
                         )
           v.           )      02:  02cv1432
                         )
NEAL MECHLING, STEVE GAVORCHIK,  )
ED JOHNSON, CO., DOREEN PLAVI,  )
ROBERT J. KERN, and         )
SCI-WAYNESBURG,         )
                         )
         Defendants.    )

**MEMORANDUM OPINION AND ORDER OF COURT**

February 1, 2006

       Presently before the Court for disposition is the MOTION FOR SUMMARY JUDGMENT filed by Defendants, with brief in support  (*Document Nos. 38 and 39 respectively*), and the Plaintiff's BRIEF IN OPPOSITION (*Document No. 45*).

       After careful consideration of the motion, the material in support and opposition thereto, the memoranda of the parties in support and opposition thereto, the relevant case law, and the record as a whole, the Court will grant Defendants' motion for summary judgment in its entirety.

### BACKGROUND

       Plaintiff, Lt. Eric Story, filed this civil rights action on August 19, 2002, in which he alleges that as a result of his reporting the alleged misconduct of Defendant CO. Ed Johnston,[1] he suffered retaliation by all Defendants in violation of  title 42, United States Code, section

---

[1]    Although misspelled in the Complaint, Defendant Johnson's name is correctly spelled "Johnston."  *See* Statement of Material Issues of Fact Not in Dispute Related to Defendants' Motion for Summary Judgment, at ¶ 9 (Document No. 42).

2000 *et seq.* ("Title VII"), and a deprivation of his First Amendment rights, in violation of  title

42, United States Code, section 1983.  Plaintiff further contends that Defendant CO. Ed

Johnston committed an assault on him.

At the time of the allegations contained in the Complaint, Plaintiff was employed by

the Pennsylvania Department of Corrections ("DOC") and assigned to the State Correctional

Institution ("SCI")- Waynesburg.   Stmt of Material Facts, at ¶ 4.  In September 2003, Plaintiff

transferred from SCI -Waynesburg to SCI - Pittsburgh.

Additionally, at the time of the allegations contained in the Complaint, the individual

defendants, Superintendent Mechling, Lieutenant Plavi, Captain Kern, Deputy Superintendent

Gavorchik and Corrections Officer Johnston were all stationed or located at SCI-Waynesburg,

where they each performed services for the Pennsylvania Department of Corrections.  *Id.* at ¶ 6.

On three separate occasions in 2001, Plaintiff filed an administrative complaint

against Defendants with the Pennsylvania Human Relations Commission ("PHRC"):  January

31, 2001; March 19, 2001; and November 13, 2001.  In the instant matter, Plaintiff contends

that "[a]fter he filed those complaints he was subjected to intense and pervasive mistreatment in

retaliation in the form of adverse employment actions . . . ."  Complaint, at ¶ 23.

Defendants have moved for summary judgment on all claims brought against them.

The matter has been fully briefed by the parties and is ripe for disposition.

## STANDARD OF REVIEW

Summary judgment should be granted "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-29 (1986).  The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion.  *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249)).  Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion.  *Id. (citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury."  *Liberty Lobby*, 477 U.S. at 251-52.

## DISCUSSION

As stated above, Plaintiff has brought a retaliation claim under  title 42, United States Code, section 2000 *et seq.* ("Title VII"); a claim that his First Amendment rights were violated in violation of title 42, United States Code, section 1983; and a state law claim of assault against Defendant CO Ed Johnston.  Plaintiff's claims will be addressed seriatim.

I.	Claims of Retaliation Under Title VII

A.	*Failure to Exhaust Administrative Remedies*

The timely exhaustion of administrative procedures is a precondition to the maintenance of a federal employment discrimination civil lawsuit.  *See* 42 U.S.C. § 20003-

5(e)(1); *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). "Filing a charge and receiving a right to sue letter are prerequisites to an individual's bringing suit under Title VII." *McNasby v. Crown Cork and Steel Co.*, 888 F.2d 270, 282 (3d Cir. 1989). "A complainant may not bring a Title VII suit without having first received a right-to-sue letter." *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001).

In the matter sub judice, Plaintiff filed his Complaint in this Court on August 19, 2002, and alleged, *inter alia,* that he had suffered retaliatory conduct in violation of Title VII. Plaintiff did not attach to his Complaint a right-to-sue letter from the EEOC nor did the Complaint state when Plaintiff filed his EEOC charge or when he received a right-to-sue letter from the EEOC. However, at his deposition, Plaintiff produced a right-to-sue letter from the EEOC dated November 4, 2002. It is undisputed that the Complaint in this matter pre-dates the right-to-sue letter by approximately 2-½ months. By Plaintiff's own admission, he did not receive a right-to-sue letter prior to filing his Complaint: "Story provided the EEOC with a copy of the August 19, 2002 complaint and the EEOC administration closed their case and issued a "Right to Sue" on November 4, 2002." Pl's Br. at 4.

As stated *supra*, filing a charge and receiving a right-to-sue letter are "prerequisites" to bringing a complaint under Title VII. *McNasby,* 888 F.2d at 282. Our appellate court has stated that exhaustion must occur "prior to bringing suit." *Freed v. Consolidated Rail Corp.*, 201 F.3d 188, 191 (3d Cir. 2000). In this case, the right-to-sue letter was received by Plaintiff in November 2002, almost 2-½ months after he had filed his Complaint. Accordingly, summary judgment will be granted on Plaintiff's Title VII claim based upon his failure to exhaust administrative remedies prior to filing this lawsuit.

4

B.    *Failure to State a Retaliation Claim Under Title VII*

Assuming *arguendo* that Plaintiff had properly exhausted administrative remedies prior to filing this lawsuit, summary judgment should still be granted in Defendants' favor because Plaintiff has failed to establish a prima facie case of retaliation under Title VII.

In order to prevail on his retaliation claim under Title VII, Plaintiff must demonstrate that: (i) he was engaged in protected activity; (ii) his employer took adverse employment action after or at the same time as the protected activity; and (iii) there was a causal link between the adverse employment action and the protected activity. *Farrell v. Planters Lifesavers Co.*, 3206 F.3d 271, 279 (3d Cir. 2000).

In his Complaint, Plaintiff pleads that "he was subjected to intense and pervasive mistreatment in retaliation in the form of the adverse employment actions . . . The retaliation included the refusal or denial of leave and transfer, failure to investigate threats against Story, and persistent haggling over, and interference and manipulations of, routine personnel practice and policies to demean and harass the plaintiff."  Complaint, at ¶¶ 23-24.

In order to meet the first prong of his retaliation claim, Plaintiff must show that he engaged in protected activity.   Plaintiff filed three complaints with the PHRC in 2001; thus, Plaintiff has demonstrated that he engaged in protected activity and has satisfied the first prong of his prima facie case. *See Williams v. Pennsylvania State Police-Bureau of Liquor Control Enforcement*, 108 F. Supp. 2d 460, 466 (E.D. Pa. 2001) ("filing a charge with the PHRC is protected activity.")

Next, Plaintiff must demonstrate that his employer took adverse employment action against him because of his protected activity.  Plaintiff alleges that he "was subjected to intense

and pervasive mistreatment in retaliation in the form of the adverse employment actions . . .

The retaliation included the refusal or denial of leave and transfer, failure to investigate threats

against Story, and persistent haggling over, and interference and manipulations of, routine

personnel practice and policies to demean and harass the plaintiff."   Assuming, without

deciding that these actions qualify as adverse, the Court finds and rules that Plaintiff has

demonstrated the second prong necessary to maintain his retaliation claim.

However, Plaintiff cannot maintain his claim for retaliation because he cannot

demonstrate causation,  the third prong.   Adverse action has to occur after or at the same time

as the constitutionally protected activity for temporal proximity to be a factor.

First, the summary judgment record demonstrates that Plaintiff's "alleged denial of

leave" and "transfer" denial occurred in December 2000,  prior to the filing of any PHRC

complaint filed by Plaintiff in 2001.  These denials of leave and transfer cannot be causally

connected to such protected activity because the actions occurred prior to the protected activity.

Further, during his deposition, Plaintiff testified that the "main part" of his complaint

relates to his desire to be "transferred to SCI-Pine Grove on September 5, 2000." (Pl. depo. at

38.)   Plaintiff simply has failed to demonstrate that he was engaged in protected activity at the

time or prior to the time he was denied a transfer to SCI-Pine Grove.

Second, Plaintiff contends that Defendants retaliated against him by "fail[ing] to

investigate threats against Story."  The record evidence simply does not support this allegation.

As to the "walkway incident" in which Plaintiff alleges that Defendant CO Johnston assaulted

him, the summary judgment record reflects that an investigation was conducted and completed

on or about August 11, 2000 by Lt. Doreen F. Plavi.  Again, the investigation was conducted and completed prior to Plaintiff's protected activity in 2001.

Plaintiff testified at his deposition that an incident of "harassment" occurred on July 15, 2002 and that he reported it to Superintendent Mechling, but that the incident was never properly investigated.  However, as Plaintiff also explained at his deposition, he did not file a report on the incident, although Superintendent Mechling had instructed him to "do the proper paperwork." (Pl. depo. at 76.)  Rather, Plaintiff contacted the state police who filed charges "for harassment" against Defendant CO Johnston in September 2002.  (*Id.* at 82-83.)  Plaintiff testified that Defendant CO Johnston was later found "not guilty."  (*Id.* at 83.)

Plaintiff's admission that he failed to "do the proper paperwork" demonstrates why an internal investigation could not have been conducted. Thus, the Court finds and rules that Plaintiff's claims of retaliation against Defendants for failing to investigate the incident of "harassment" must fail.

Third, Plaintiff alleges that he was retaliated against in the form of adverse action by "haggling over and interference and manipulations of routine personnel practice."  Complaint, at ¶ 24.  At his deposition, Plaintiff testified that he believes "Captain Kern was the main person" who retaliated against him.  (Pl. depo. at 33.)   Plaintiff testified that Kern "would deny me leave, put me on different shifts, take me off shifts, change my pass day at will." (*Id*. at 33-34.)

However, when asked for specific dates when Kern retaliated against him, Plaintiff replied, "January 17, 1999" or "it might have been 2000" and "July 22-23, 2000." (*Id.* at 34-37.)  In fact, Plaintiff admitted that "[i]t all started when, well, it started long before then, but

before I filed a complaint on June 24 I believe it was of 2000." (*Id.* at 54.)  Once again, the

actions of which Plaintiff complains occurred prior to his having engaged in protected activity.

Thus, the Court finds and rules that there is no causal connection between the alleged retaliatory

conduct and Plaintiff's protected activity in 2001.

Lastly, Plaintiff testified that he was "yanked" off shift commander at Christmastime

in 2003 when he "filed procedures" against people bringing in "cupcakes and soft drinks" to

SCI-Waynesburg.  (*Id.* at 38.)   The Court notes that this is the <u>only</u> act of alleged retaliation

which occurred after Plaintiff engaged in protected activity.  However, the Court finds that the

temporal proximity of this lone instance is unrelated to any protected activity which occurred in

2001, approximately two to three years earlier.  *Robinson v. City of Pittsburgh,* 120 F.3d 1286,

1302 (3d Cir. 1997) (mere fact that adverse action occurs after a complaint is insufficient to

establish causation); *Krouse v. American Sterilizer Co.*, 126 F.3d 494. 503 (3d Cir. 1997)

(finding period of nineteen months did not establish causation.)

For all the foregoing reasons, the Court finds and rules that Plaintiff has failed to

demonstrate a *prima facie* case of retaliation under Title VII and, thus, summary judgment will

be granted.


II.      <u>Claims under 42 U.S.C. § 1983</u>

Title 42,  United States Code, section 1983, does not create substantive rights, but

provides a remedy for the violation of rights created by federal law.  *City of Oklahoma City v.*

*Tuttle*, 471 U.S. 808, 816 (1985).  A *prima facie* case under § 1983 requires a plaintiff to

demonstrate that:  (1) a person deprived him or her of a federal right;  and (2) the person who

deprived him or her of that right acted under color of state or territorial law. *Connecticut v. Gabbert*, 526 U.S. 286 (1999), *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).[2]

Named as defendants in this action are SCI-Waynesburg and officials at SCI-Waynesburg. "The defendant Mechling, Plavi, Captain Robert J. Kern, Deputy Steve Gavorchick, and CO Ed Johnson and (sic) are all stationed, or are located, at SCI Waynesburg where they perform services for the Pennsylvania Department of Corrections. More specifically Mr. Neal Mechling is Superintendent at SCI Waynesburg. Mr. Steve Gavorchik is Mr. Mechling's Deputy. Mr. Kern is a captain and Ms. Plavi is a lieutenant at SCI Waynesburg. Mr. Ed Johnson is a Corrections Officer I at SCI Waynesburg." Complaint, at ¶ 10.

It is not clear from the Complaint whether Plaintiff has sued the individual defendants in both their official and individual capacities. In response to Defendants' motion for summary judgment, Plaintiff argues, for reasons that are unclear "that Eleventh Amendment immunity does not apply in this case," but he does not offer any support or authority for that argument. Therefore, in an abundance of caution, the Court will assume for the purpose of this opinion only, that Plaintiff has sued the individual defendants in both their official and individual capacities.

---

[2]      Section 1983 provides that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable . . .

42 U.S.C. § 1983.

A.      *Eleventh Amendment Immunity: SCI -Waynesburg and the Individual*
        *Defendants acting in their official capacities*

Defendants seek summary judgment on Plaintiff's claims brought under § 1983 on

the grounds that they are immune from suit by virtue of the Eleventh Amendment.  Absent a

state's consent, the Eleventh Amendment bars a civil rights suit in federal court that names the

state as a defendant.  *Edelman v. Jordan,* 415 U.S. 651, 663 (1994).   By statute, Pennsylvania

has specifically withheld consent:

> Federal courts.  Nothing contained in this subchapter shall be construed to
> waive the immunity of the Commonwealth from suit in Federal courts
> guaranteed by the Eleventh Amendment to the Constitution of the United
> States.

42 Pa. Cons. Stat. Ann § 8521(b).  The bar of the Eleventh Amendment extends to suits against

departments or agencies of the state having no existence apart from the state.  *Laskaris v.*

*Thornburgh,* 661 F.2d 23, 25 (3d Cir. 1981) (*citing Mt. Healthy City Board of Education v.*

*Doyle,* 429 U.S. 274, 280 (1977)).  Likewise, official capacity suits are nothing more than suits

against an official's employing agency.  *Kentucky v. Graham*, 473 U.S. 159 (1985); *Laskaris,*

661 F.2d at 26.

SCI-Waynesburg is clearly a component of the Pennsylvania Department of

Corrections, which is an administrative department of the Commonwealth of Pennsylvania.

*See* 71 Pa. Stat. § 61 (naming the Department of Corrections as an administrative department of

the Commonwealth).  Accordingly, SCI-Waynesburg it is entitled to Eleventh Amendment

immunity from suit and the individual defendants acting in their official capacities are likewise entitled to Eleventh Amendment immunity.[3]


        B.     *Individual Defendants Acting in their Individual Capacities*

       The Eleventh Amendment, however, does not bar actions against state officials acting in their individual capacities.  "When a state officer violates federal constitutional mandates, even when carrying out state policy, he is 'stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct'." *Laskaris,* 661 F.2d at 26 (quoting *Ex Parte Young*, 209 U.S. at 160).

       In order to render Defendants, in their individual capacities, personally liable under § 1983, Plaintiff must establish that Defendants participated in the violation of Plaintiff's rights, that they directed others to violate them, or that, as supervisors, they tolerated past or ongoing misbehavior.  *See Baker v. Monroe Twp.*, 50 F.3d 1186 (3d Cir. 1995) (setting out appellate court's "well established standard for individual liability" under § 1983); *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 724-25 (3d Cir.1989), *cert. denied*, 493 U.S. 1044 (1990) (supervisory liability under § 1983).

       Plaintiff alleges that he was "subjected to threats and investigations" after he had "occasion to report E. Johnson for violations of DOC rules and, or, the prison's policies."

---

[3]      Section 1983 does not abrogate Eleventh Amendment immunity as the Supreme Court has held that neither a state nor its officials acting in their official capacities are "persons" under § 1983.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).  Therefore, SCI-Waynesburg and the individual defendants acting in their official capacity are not subject to liability under § 1983 even absent their Eleventh Amendment immunity.

Complaint, at ¶ 15.  However, as stated *supra,* with the exception of one incident, the alleged retaliatory treatment of which Plaintiff complains all occurred <u>prior</u> to Plaintiff filing his three complaints with the PHRC in 2001.  As to the one incident which occurred in late 2003,  the record is completely void of any evidence which demonstrates that this lone instance is related to any protected activity which occurred approximately two to three years earlier.  *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1302 (3d Cir. 1997) (mere fact that adverse action occurs after a complaint is insufficient to establish causation); *Krouse v. American Sterilizer Co.*, 126 F.3d 494. 503 (3d Cir. 1997) (finding period of nineteen months did not establish causation.)

Accordingly, the Court finds and rules that Plaintiff has failed to demonstrate that he was deprived of his First Amendment rights as a result of having engaged in protected activity.  Accordingly, summary judgment will be granted to the individual Defendants on Plaintiff's claims brought under § 1983.

III.        <u>Claim of Assault</u>

Plaintiff alleges that Defendant Johnston "physically assaulted [him] intending to intimidate him into not reporting misconduct and filing EEO complaints."  Complaint, at ¶ 25.

Apparently, Plaintiff and Defendant Johnston agree that the alleged assault, which consisted of the two bumping into one another, occurred on the "walkway" of the prison during regular working hours.  (Pl. depo, at 71-75; Johnston depo, at 22.)  Plaintiff testified that the incident occurred on July 29, 2001 "in the institution on the walkway."  (Pl. depo. at 71.)  Plaintiff testified that on that day, while working at the prison, he "escorted" an inmate to the medical area.  As Plaintiff was leaving the medical area, he passed "six or eight officers,"

including Johnston, on the walkway.  Plaintiff contends that as he passed the group, Johnston intentionally bumped into him.  Plaintiff reported the incident to the shift commander at the prison.

To the contrary, Defendant Johnston alleges that Plaintiff was walking down the opposite side of the walkway, crossed in front of the six other people and directly walked into him.  (Johnston Depo., at 22).

An internal investigation was conducted by Lt. Doreen F. Plavi, who concluded, *inter alia,* that "[t]he evidence would indicate that Lt. Story deliberately engaged in physical contact with Officer Edward Johnston on the date and time in question. . . . Four of the five witnesses support Officer Johnston that Lt. Story was, in fact, the one who deliberately walked in the direction of Officer Johnston and caused the contact between them."  Mot. for Summ J., App. D.

Regardless of who caused the contact, there is no dispute that both Plaintiff and Johnston were acting within the scope of their employment at the time of the alleged "assault." Therefore, Defendant Johnston argues that he is entitled to sovereign immunity on the claim for assault brought against him.

The Pennsylvania General Assembly passed a comprehensive tort claims act which provides for sovereign immunity for the Commonwealth and its officials and employees, except in nine limited areas.  The Act reads in pertinent part:

> the Commonwealth and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.  When the General Assembly specifically waives sovereign immunity, a claim against the Commonwealth, and its officials and employees shall be brought only in such manner and in such

court and in such cases as directed by the provisions of Title 42 (relating to
judiciary and judicial procedure) unless otherwise specifically authorized
by statute.

1 Pa. C.S. § 2310.

The nine exceptions to sovereign immunity are in the areas of motor vehicle

operation, medical malpractice, care of personal property, dangerous conditions of real estate,

dangerous conditions of highways, care of animals, liquor store sales, the activities of the

National Guard, and the administration, manufacture and use of a toxoid or vaccine.  42 Pa.

C.S. § 8522(b)(1)-(9).  Thus, no liability can be imposed against a Commonwealth party unless

the claim falls within one of the above nine categories in which sovereign immunity has been

waived.  *Yakowicz v. McDermott,* 548 A.2d 1330 (Pa. Commw. Ct. 1988).

A "Commonwealth party" entitled to immunity is defined as a Commonwealth

agency and its employees with respect to acts within the scope of their employment.  42 Pa.

C.S.A. § 8501.   Sovereign immunity bars monetary relief claims against state defendants

acting in their individual capacity.  *Maute v. Frank*,  657 A.3d 985, 986 (Pa. Super. Ct. 1995).

Further, "a Commonwealth defendant cannot be held liable for damages arising out

of intentional torts."  *Holt v. Northwest Pennsylvania Training Partnership Consortium, Inc.,*

694 A.2d 1134, 1137 (Pa. Commw. Ct. 1997); *LaFrankie v. Miklich,* 618 A.2d 1145, 1149 (Pa.

Commw. Ct. 1992) ("Commonwealth employee is protected by sovereign immunity from the

imposition of liability for intentional tort claims").

Thus, because Defendant Johnston was acting within the scope of his employment at

the time of the alleged "assault" and because "assault" does not fall within any of the nine

exceptions to sovereign immunity, the Court finds that Defendant Johnston is entitled to

sovereign immunity on the assault claim brought against him in this action.


### Conclusion

For the reasons discussed *supra*, the Court finds that the Motion for Summary

Judgment filed by Defendants should be granted in its entirety.  An appropriate Order follows.


McVerry, J.

15

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

LT. ERIC STORY,                          )
                                         )
                  Plaintiff,    )
                                         )
                  v.             )          02:  02cv1432
                                         )
NEAL MECHLING, STEVE GAVORCHIK,          )
ED JOHNSON, CO., DOREEN PLAVI,           )
ROBERT J. KERN, and                      )
SCI-WAYNESBURG,                          )
                                         )
                  Defendants.   )

**ORDER OF COURT**

AND NOW, this 1st day of February, 2006, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** that the

Motion for Summary Judgment filed by Defendants is **GRANTED** and judgment is hereby

entered in favor of Defendants.

The Clerk of Court shall mark this case closed forthwith.

BY THE COURT:

s/Terrence F. McVerry, Judge
United States District Court

cc:      Don Bailey, Esquire
         Bailey & Ostrawski
         Email: dbailey@bsolaw.com

         Craig E. Maravich,
         Deputy Attorney General
         Email: cmaravich@attorneygeneral.gov